No. 82-182

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

ROBERT W. CALLIHAN,

        Plaintiff and Respondent,

  -vs-

BURLINGTON NORTHERN INC.,

        Defendant and Appellant.

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula, The Honorable
John S. Henson, Judge presiding.

Counsel of Record:

    For Appellant:

        K. Kent Koolen, Billings, Montana
        Corette, Smith, Pohlman & Allen, Butte, Montana

    For Respondent:

        John C. Hoyt, Great Falls, Montana

Submitted on Briefs:  September 16, 1982

Decided:  December 6, 1982

Filed:  DEC - 6 1982

_Thomas J. Kearney_
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Burlington Northern appeals a judgment in the amount of $1,031,029.00 awarded plaintiff, Robert W. Callihan, for personal injuries suffered in an accident March 25, 1978. A motion for new trial was made and denied. This appeal followed.

On March 25, 1978, Callihan was an engineer on a Burlington Northern locomotive. The back of the seat, in which he was sitting, broke, causing him to fall backwards. By the end of the trip, Callihan was suffering severe back pain. He made six more trips as engineer prior to ceasing work April 9, 1978, due to unbearable back pain.

Callihan had suffered two previous back injuries while working for Burlington Northern, both resulting in settlements between Callihan and Burlington Northern. In 1954, a train on which Callihan was riding made an emergency stop, throwing him from a bunk. About a year later, he had back surgery. A laminectomy was performed and vertebrae in his lower back were fused. Following the surgery, Callihan returned to his regular employment and his normal recreational activities-- hunting, horseback riding, dancing, lawn work, carpentry, remodeling and painting. He also began playing golf and became quite accomplished.

In 1971, Callihan slipped and fell on ice outside the train depot in Troy, Montana. He continued regular employment until 1973, when a second back operation was performed. The operation consisted of another laminectomy and the fusion of vertebrae immediately above the first fusion.

Following the second operation, Callihan again returned to his regular, full-time employment. His preaccident activities were not restricted. However, he took Tylenol 3

regularly, as well as Valium in the evening for sleeping purposes.

After open heart surgery in 1977, three doctors pronounced Callihan to be in good health and able to return to work without restriction. Later in 1977, after a mandatory physical, a railroad doctor reported that Callihan had passed with "flying colors."

Apparently, Callihan then remained in good health until suffering his third back injury on March 25, 1978. The resulting pain was so severe, he ceased working and sought relief from many different doctors and procedures. From April 10, 1978, until the commencement of this suit on August 28, 1980, Callihan had three myelograms, two laminectomies, five nerve blocks, four rhizotomies and a partial rhizotomy, for a total of seven operations. He also visited a chiropractor and an acupuncturist, to no avail.

The myelograms failed to disclose the cause of pain. The laminectomies only temporarily lessened the pain. Therefore, the rhizotomies (severance of nerves) were performed. Callihan's left leg is nearly useless as a result of the rhizotomies. However, the pain remains excruciating.

Callihan now spends ninety percent of his time lying on his right side on the sofa with a pillow between his legs to relieve the pressure on his left leg. Sitting in a chair to eat dinner is a major, energy-draining task. He is unable to enjoy any of his previously discussed physical acitivities. The operations have left him impotent. Mrs. Callihan must be present to assist him twenty-four hours a day. Tylenol 4, Percodan and Valium allow Callihan to sleep.

Dr. Herman Walters, Director of the Clinical Psychology Department at the University of Montana, examined plaintiff.

He testified at trial that Callihan suffers significant reactive depression; that he does not enjoy life; that he is sad and very pessimistic about the future. Although it has since passed, he at one time had suicidal tendencies caused by his condition. Walters testified that Callihan's depression would not improve until his physical condition improved. Dr. Albi, Callihan's treating physician, stated, "I can only repeat that this man is totally beyond any rehabilitation physically. . ." Callihan's physical and emotional future is bleak.

Joseph Kasperick is an assistant economics professor at Montana College of Mineral Science and Technology in Butte. He prepared an appraisal estimating the value in present dollars of Callihan's earnings to age sixty-five to be $271,828.39, had he not been injured in 1978. Kasperick also estimated the lost value in present dollars of Callihan's household services to be $44,309.04, making the total of lost earnings and services $316,137.43. Assuming the jury adopted Kasperick's figures in determining Callihan's total award of $1,031,029.00, they then awarded Callihan approximately $715,000.00 for pain, suffering and loss of his established course of life.

Burlington Northern presented no direct evidence contradicting the above synopsis of plaintiff's case. Instead, defendant attempted to present its case through the cross-examination of plaintiff's witnesses. Callihan's doctors admitted on cross-examination that prior back injuries contributed to Callihan's present condition. However, no one was able to specifically apportion the various injuries.

In appealing the jury verdict and judgment in favor of plaintiff, defendant presents the following issues for our consideration:

(1) Did the District Court err in granting plaintiff's motion for partial summary judgment on the issue of liability under the Safety Appliance Act without then considering proximate cause?

(2) Did the District Court err in granting plaintiff's motion in limine to exclude prior settlements of two prior injuries to plaintiff's back?

(3) Did the District Court err in overruling defendant's objections to Instruction No. 17 and Instruction No. 18?

(4) Was the jury verdict of $1,031,029.00 the result of passion and prejudice?

On cross appeal, plaintiff requests we consider the following issues:

(1) Whether the District Court erred in denying plaintiff's motion for an order awarding prejudgment interest at the rate of ten percent per annum to run from the date of plaintiff's injury because of defendant's abuse of the judicial process?

(2) Whether this Court should grant Rule 32 sanctions for filing of a frivolous appeal for purposes of delay?

We affirm the jury verdict and judgment for plaintiff and deny plaintiff's requests for prejudgment interest and Rule 32 sanctions.

Plaintiff's action is based upon violation by defendant of federal statutes known as the Boiler Inspection Act, 45 U.S.C. §§23-34 (a portion of the Safety Appliance Act) and the Federal Employer's Liability Act, 45 U.S.C. §§51 et seq. Specifically, 45 U.S.C. §23 provides:

> "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate. . .that the same may be employed in the active service of such carrier without unnecessary peril to life or limb. . ."

This section imposes absolute liability upon any carrier which violates it. Lilly v. Grand Trunk Western R. Co. (1943), 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411.

On the basis of this statute and the uncontested fact that the seat in which plaintiff, Callihan, was sitting broke because of improper welding, plaintiff moved for partial summary judgment against defendant on the issue of liability, pursuant to Rule 56(c), M.R.Civ.P. The motion was granted by order September 10, 1981, following a hearing on the issues.

Defendant now objects to that order, stating that the District Court improperly failed to consider whether the absolute liability resulting from defendant's violation of the section, was the proximate cause of plaintiff's injuries. In McGee v. Burlington Northern, Inc. (1977), 174 Mont. 466, 476, 571 P.2d 784, 790, we held: ". . .recovery for a FSAA violation is predicated upon a showing of: (1) A violation of the Act, and (2) injury proximately caused thereby." The order granting summary judgment pertains solely to part (1), Burlington Northern's violation of 45 U.S.C. §23 and the attendant absolute liability imposed. It is affirmed.

It remained a function of the jury to determine whether that violation proximately caused plaintiff's injuries. The jury was so instructed. Jury Instructions Nos. 8, 9, and 10, adequately define "proximate cause" and clearly limit any award of damages to damages for injuries proximately caused by the March 25, 1978, accident.

The District Court issued a pretrial order January 5, 1982, which, among other things, granted plaintiff's motion in limine to exclude evidence relating to plaintiff's previous settlement of claims with Burlington Northern. Plaintiff contends such evidence is irrelevant to the issue before the

-6-

jury. Defendant contends that since the jury heard evidence
regarding those previous injuries, it should also know of
the settlement of the claims resulting from those injuries.

Rule 401, Mont.R.Evid., provides in part:

"Relevant evidence means evidence having any
tendency to make the existence of any fact
that is of consequence to the determination
of the action more probable or less probable
than it would be without the evidence."

Rule 403, Mont.R.Evid., provides:

"Although relevant, evidence may be exclud-
ed if its probative value is substantially
outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the
jury, or by considerations of undue delay,
waste of time, or needless presentation of
cumulative evidence."

Here the prior settlements would show a preexisting
condition. However, the fact of a preexisting condition was
conceded by plaintiff. Compromise settlements for previous
injuries do not necessarily reflect the seriousness of the
injury and may confuse the jury. Here the trial court found
that any probative value was outweighed by possible prejudice.
The trial court's discretion should not be disturbed. Cech
v. State of Montana (1979), ____ Mont. ____, 604 P.2d 97, 36
St.Rep. 1348.

Next, defendant objects to two instructions given to
the jury at the close of the trial. Instruction No. 17
states:

"Where a pre-existing condition exists which
has been aggravated by the accident, it is
your duty, if possible, to apportion the
amount of disability and pain between that
caused by the pre-existing condition and
that caused by the accident. But if you
find that the evidence does not permit such
an apportionment, then the defendant is liable
for the entire disability."

Defendant contends that the last sentence in this instruction
is an incorrect statement of law. Although this question
has not previously been before this Court, we find analogous

case law persuasive. In Azure v. City of Billings (1979), 182
Mont. 234, 596 P.2d 460, we stated:

> ". . .to impose upon the plaintiff the some-
> times impossible burden of proving which
> tortious act did which harm, would be an ex-
> pression of a judicial policy that it is
> better that a plaintiff, injured through no
> fault of his own, should take nothing simply
> because he could not prove which tortious
> act caused which harm. We believe on the
> other hand, that where the tortious act is
> established, it is better that the tortfeasor
> should be subject to paying more than his
> theoretical share of the damages in a situa-
> tion where the tortious conduct has contri-
> buted to the confused situation making it
> difficult to prove which tortious act did
> the harm." 596 P.2d at 470-471.

Azure involved two tortfeasors. However, the same
rationale applies in this case. Plaintiff's injuries are
the result of three different accidents over a span of
twenty-four years. Plaintiff should not go uncompensated
should the evidence not permit an apportionment of injuries
and damages. See also Restatement of Torts, Second, Section
461 (comment a), p. 502. The giving of Jury Instruction No.
17 is affirmed.

Defendant objects to Instruction No. 18 which states:

> "You are instructed that the defendant
> is liable to the plaintiff for the re-
> sults of medical treatment even where
> such treatment is itself negligent, so
> long as the plaintiff exercised reason-
> able care in his selection of a physi-
> cian."

This instruction is clearly a correct statement of law. See
Restatement of Torts, Second, Section 457 (comment a), p.
496.

Defendant objects to the instruction because the negligence
of plaintiff's doctors is not an issue. However, the jury
was instructed at the start of the trial that: "You are
permitted to draw from facts which you find have been proved

-8-

such reasonable inferences as seem justified in the light of your experience." Transcript of proceedings, p. 111. The jury was then told of seven unsuccessful operations and informed that the four rhizotomies resulted in a total inability of plaintiff to use his left leg. From those facts, the jury might infer negligence on the part of the doctors. A reasonable question to arise from that inference is "to what extent is the defendant liable for the results of the negligent treatment?" Instruction No. 18 is proper under these facts.

Following the jury verdict for plaintiff, defendant moved for a new trial, alleging the verdict was marked by passion and prejudice. Defendant specifically complains of the $715,000.00 portion of the verdict awarded for pain, suffering and loss of established course of life.

The record shows plaintiff's life largely consists of experiencing intractable pain. Plaintiff cannot participate in the outdoor activities which he loved. He can no longer be an active, productive member of his family. Nor is he able to enjoy a physical relationship with his wife. Defendant's claims investigator, William J. Burke, stated in his deposition that in his opinion, Mr. Callihan suffered more than any other claimant with whom Mr. Burke had come in contact during his thirty-four year career as a claims investigator.

Pain can constitute the most devastating loss suffered by an injured person. Greatest happiness is found in sharing family love, knowing and feeling the beauty of nature, and in laughter, quiet reflection, and experiencing inner peace. When pain destroys these richest of life's treasurers, the quality of life has been significantly diminished. The evidence here supports the award made.

On cross-appeal, plaintiff requests we award prejudgment interest at the rate of ten percent per annum to run from the date of plaintiff's injury, March 25, 1978. Although we are well aware of the policy reasons for an award of prejudgment interest, plaintiff's request is denied. Section 27-1-211, MCA, states in relevant part:

> "27-1-211. Right to interest. Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day. . ."

This statute allows interest only from the date of judgment, as that is the day the damages are capable of being made certain. Ryan v. Ford Motor Co. (D.C. Mont. 1971), 334 F.Supp. 674; Wyant v. Dunn (1962), 140 Mont. 181, 368 P.2d 917.

The issues presented on appeal are not frivolous. Plaintiff's request for Rule 32 sanctions is denied.

The judgment of the District Court is affirmed and plaintiff's requests denied.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

-10-