No. 84-485

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985


JACK D. ANDERSON,

        Plaintiff and Respondent,

    -vs-

BURLINGTON NORTHERN, INC.,
a Delaware Corporation,

        Defendant and Appellant.


APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moulton, Bellingham, Longo & Mather; K. Kent Koolen
        argued, Billings, Montana

    For Respondent:

        Kelly & Halverson, P.C.; Sheehy, Prindle & Finn;
        Victor R. Halverson argued, Billings, Montana


                Submitted: September 20, 1985

                  Decided: November 26, 1985

Filed: NOV 26 1985

*Ethel M. Harrison*
_____
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

This is an appeal from the District Court's granting of partial summary judgment on liability and jury verdict on damages in a personal injury action brought pursuant to the Federal Employers' Liability Act and the Federal Boiler Inspection Act.

We considered the following issues on appeal:

1. Whether the District Court erred in granting respondent's motion for partial summary judgment on the violation of the Boiler Inspection Act.

2. Whether the District Court erred by improperly removing the issues of causation from the jury.

3. Whether the District Court erred in denying appellant's challenge for cause to juror Dailey.

4. Whether the District Court committed reversible error in refusing to instruct the jury regarding the nontaxability of any award made by the jury to injured railroad employee.

5. Whether the District Court erred in instructing the jury to include medical expenses incurred by respondent in its damages award even though some or all of those expenses had been covered by appellant's insurer.

6. Whether the District Court erred in adding a directed verdict for medical expenses to the jury award when the jury had been instructed to include medical expenses in its award.

We affirm the judgment of the District Court on all issues except the sixth. We reverse the District Court's directed verdict which added $11,795.25 to the jury verdict.

Respondent, Jack D. Anderson, was a locomotive engineer employed by the appellant, Burlington Northern Railroad Company (BN), working on a train assigned to snowplow service north and west of Saco, Montana. During a lull in the operations, respondent entered a toilet compartment at the rear of the locomotive. The toilet compartment is a small room about six feet wide by seven feet long used for storage of tools and equipment as well as providing toilet facilities for the crew. The compartment is dimly lit.

Respondent claims that as he walked into the compartment, he tripped and stumbled head-on into the sandbrum on the opposite wall of the compartment. Without looking to see what may have caused his fall, respondent left the compartment and informed other crew members of the accident. The other crew members then checked the compartment and found a pilot, an iron skirt which serves as a cow catcher, on the floor of the compartment. Apparently, the pilot had been recently stored out-of-the-way in the compartment. The jerking from the snowplowing operation jarred the pilot out to a point in front of the compartment entrance where respondent tripped.

As a result of the accident, respondent suffered from neck pain. He sought treatment from an orthopedic surgeon, Thomas Power, M.D., in Great Falls. A cervical sprain was diagnosed, and respondent was treated with rest, traction and physical therapy. Respondent continued to suffer from neck pain and went to an orthopedic surgeon in San Francisco, Arthur White, M.D. Dr. White diagnosed the injury as a herniated disc and performed a cervical fusion on August 1, 1978. The surgery relieved respondent's pain for awhile.

However, the pain resumed and rendered the respondent incapable of working.

Respondent then brought this action in the Eighth Judicial District to recover damages for personal injuries sustained within the scope of his employment as a locomotive engineer for BN.

In the meantime, BN's insurer had paid respondent's medical expenses in accordance with a collective bargaining agreement. Respondent filed a motion in limine to prevent any mention of appellant's payment of the medical expenses during trial. Respondent maintained that the insured's payment of the medical expenses was a collateral source of no benefit to appellant. The District Court agreed and granted respondent's motion and directed a verdict in favor of respondent on his claim for medical expenses. The District Court also granted respondent's motion for partial summary judgment holding that the pilot on the floor of the toilet compartment constituted a violation of the Boiler Inspection Act for which defendant was strictly liable. The issues of causation and damages were submitted to the jury. The jury returned a verdict for damages of $195,000 to which the directed verdict of $11,795.25 for medical expenses was added for a total judgment of $206,795.25. BN appeals that judgment.

Respondent's action is based upon violation by BN of two federal statutes known as the Boiler Inspection Act, 45 U.S.C. § 22 et seq., (a portion of the Safety Appliance Act) and the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. In particular, 45 U.S.C. § 23 provides:

> It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its

> boiler, tender, and all parts and appur-
> tenances thereof are in proper condition
> and safe to operate . . . that the same
> may be employed in the active service of
> such carrier without unnecessary peril
> to life or limb . . .

In Callihan v. Burlington Northern, Inc. (Mont. 1982), 654 P.2d 972, 975, 39 St.Rep. 2158, we followed the United States Supreme Court decision in Lilly v. Grand Trunk R. Co. (1943), 317 U.S. 481, 485, 63 S.Ct. 347, 87 L.Ed. 411, in holding that this section interacts with the FELA to impose absolute liability on anyone that violates it. Callihan, 654 P.2d at 975, also determined that recovery for a Boiler Inspection Act violation requires a showing of: (1) a violation of the Act, and (2) injury proximately caused by that violation.

I

Appellant here claims that whether or not the piece of pilot on the floor violated the Boiler Inspection Act was a question of fact for the jury and that it was error for the District Court to grant summary judgment on that issue. A large iron object on the floor of a dimly lit walkway in a moving locomotive seems to us to involve "unnecessary peril to life or limb" so as to violate the Act, but without more this would be a conclusion for the jury to make. However, in this case we are not left to our own resources in construing the Act. The Federal Railroad Administration, Department of Transportation, has set the standard by imposing the follow-ing railroad locomotive safety regulation:

> Floors of cabs, passageways, and com-
> partments shall be kept free from oil,
> water, waste or any obstruction that
> creates a slipping, tripping or fire
> hazard. Floors shall be properly treat-
> ed to provide secure footing.

5

49 C.F.R. § 229.119(c).

There is uncontroverted evidence that there was a pilot in the walkway in violation of this rule. In <u>Lilly</u>, 317 U.S. at 488, the United States Supreme Court, when faced with a similar rule, held that a rule adopted in exercise of the Interstate Commerce Commission's authority to set standards of compliance with the Boiler Inspection Act acquires the force of law and becomes an integral part of the Act. Because the Federal Railroad Administration has taken over the functions of the Interstate Commerce Commission with respect to railroad safety, 49 U.S.C. § 1655(e) and (f), this holding is directly applicable to the instant case. BN, by violating a rule that was adopted in exercise of the Federal Railroad Administration's authority to set standards of compliance with the Boiler Inspection Act, has also violated the Act.

Appellant questions whether this rule was properly before the District Court. However, the rule was referred to in depositions presented with the motion for summary judgment. Moreover, in <u>Lilly</u>, supra, the federal rule had not been called to the attention of the trial court. The Supreme Court held that it will take judicial notice of federal rules setting standards of compliance with the Boiler Inspection Act. <u>Lilly</u>, 317 U.S. at 488. We will not ignore the federal rule now.

Even if there was no violation of the Act as a matter of law because of the federal regulation, the District Court could have found the violation issue proper for summary judgment because of BN's own safety rule No. 112 which was before the court. Rule No. 112 provides:

> To avoid stumbling, tripping, and fall-
> ing, floors, gangways and steps of

> locomotives must be kept free of sup-
> plies, tools, and loose equipment.

Such a safety rule is strong evidence that a violation of that rule would present "unnecessary peril to life and limb." Because appellant has provided nothing to counter this evidence of a Boiler Inspection Act violation, summary judgment was appropriate.


II

The second prong of our test for recovery under the Boiler Inspection Act is whether the violation of the Act proximately caused plaintiff's injury. Callihan, supra. BN argues that the District Court failed to properly consider the issue of causation. We disagree.

By granting summary judgment on liability, the District Court took the issue of whether BN's violation of the Boiler Inspection Act caused the accident from the jury. Appellant, however, claims that there was insufficient evidence to establish the cause of respondent's accident because respondent did not see what he tripped over and the other witnesses did not see the accident. Appellant then speculates that respondent may have tripped over something besides the pilot. However, we follow the rule that inferences drawn from circumstantial evidence can be as probative as direct evidence. Barich v. Ottenstror (1976), 170 Mont. 38, 42, 550 P.2d 395, 397. Furthermore, the party opposing a motion for summary judgment on a record which reveals no issue of material fact must present facts of substantial nature, and conclusionary or speculative statements are insufficient to raise genuine issues of material fact. Barich, supra; Rule 56, M.R.Civ.P.

The depositions establish that respondent went into the toilet compartment and fell, hurting his head and shin.

Respondent's co-workers saw him enter the compartment, heard a "thump" and a shout, saw respondent come out of the compartment, listened to respondent's immediate complaints, and immediately investigated the compartment where they found the pilot near the door. The obvious inference from this evidence is that respondent tripped over the pilot. Appellant only speculates that something else caused the accident. As such, the trial court was entitled to conclude that BN's violation of the Boiler Inspection Act in not keeping a walkway free of obstructions caused the accident.

Appellant also argues that the jury was improperly instructed on the issue of causation. The same argument that the jury failed to consider causation under similar facts to the instant case was considered by this Court in Callihan, supra. In Callihan, plaintiff injured his back when the seat he was sitting on in a BN locomotive broke. We held that the jury was properly instructed on the issue of causation where instructions clearly limited the award of damages to damages for injuries proximately caused by the accident. Callihan, 654 P.2d at 975. In the instant case, Court Instruction No. 7 stated:

> In this case, Plaintiff seeks damages under a law of the United States commonly called the Federal Boiler Inspection Act. It has been determined by this Court that on February 28, 1978, at the time of the fall for which Jack Anderson seeks to recover, the Defendant, Burlington Northern, Inc., was in violation of the Federal Boiler Inspection Act, by reason of the presence of a piece of metal pilot in the entry way to the toilet compartment of Burlington Northern locomotive number 1820.

> Therefore, the only issues for your consideration are:

8

> (1) Whether Plaintiff was injured as a
> result of the accident occurring on
> February 28, 1978; and
>
> (2) The amount of damages, if any,
> Plaintiff is entitled to receive for any
> injuries which you may find were caused
> by the accident of February 28, 1978.

Court Instruction No. 12 instructed the jury similarly. As such, the jury was not improperly instructed on the issue of causation.


III

Appellant specifies that the District Court erred in not disqualifying juror Dailey upon challenge for cause. We adhere to the rule that the trial court is in a better position to judge the prejudice of jurors and its findings and its decision will not be set aside unless the error is manifest or there is a clear abuse of discretion. Liss v. Kreitel (1973), 162 Mont. 144, 147, 509 P.2d 841, 843. The rule is the same where there has been the forced use of a peremptory challenge. Abernathy v. Eline Oil Field Services, Inc. (1982), 650 P.2d 772, 777, 39 St.Rep. 1688, 1696.

Here, during appellant's voir dire of prospective juror Dailey, Dailey revealed that he is a grain farmer that utilizes BN yearly to ship his grain. He stated that he felt BN was grossly overcharging for its services. Appellant challenged the juror for cause. The trial judge then questioned Dailey to determine if he held any feelings of animosity toward BN that would preclude him from awarding damages fairly. Dailey denied any such animosity, and the judge denied the challenge. While we think it may have been best to dismiss Dailey because other jurors were readily available, we can see no abuse of discretion.

BN contends that the trial court erred in failing to instruct the jury on the nontaxability of any award made by the jury. We recently considered the same argument in Dallas v. Burlington Northern, Inc. (Mont. 1984), 689 P.2d 273, 277, 41 St.Rep. 1902, 1908. The Federal Circuit Courts of Appeal are not in agreement on this issue. See Flanagan v. Burlington Northern, Inc. (8th Cir. 1980), 632 F.2d 880, 889, and O'Byrne v. St. Louis Southwestern Ry. (5th Cir. 1980), 632 F.2d 1285, 1287. We will adhere to our holding in Dallas, 689 P.2d at 278, that in a case where the jury awards the exact amount of damages projected by the economist any error in failing to give a nontaxability instruction is harmless. This holding was based on the rationale that the jury clearly did not award a sum for some future tax obligation.

In the instant case, the jury awarded $195,000, or $45,000 less than the $240,000 in damages projected by the economist. Therefore, by the rationale in Dallas, any error in failing to give the nontaxability instruction is harmless.

Having thus held, we are compelled to comment that in the future it would be better for a trial court to give a nontaxability instruction to the jury. Such an instruction is easily made and would remove any doubt as to whether the jury overcompensated plaintiff on the basis of an erroneous assumption that the judgment will be taxed. We make this comment because of trial courts' reliance on previous holdings by this Court that future income tax liability is an improper consideration in formulating an award for loss of future earnings. See Torchia v. Burlington Northern, Inc. (1977), 174 Mont. 83, 96, 568 P.2d 558, 566; McGee v.

Burlington Northern, Inc. (1977), 174 Mont. 466, 477, 571 P.2d 784, 791. Those holdings have been overruled by the United States Supreme Court in Norfolk & Western Ry. v. Liepelt (1980), 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689. After Liepelt, it is proper to give the nontaxability instruction.

V

The medical expenses Anderson incurred for treatment of the injuries he sustained in the February 28, 1978, accident were paid directly by Travelers' Insurance Company; or, they were paid by Burlington Northern and Burlington Northern was reimbursed by Travelers. Prior to trial, Anderson's motion in limine to prohibit BN from showing that BN or Travelers had paid these expenses was granted. BN claims that the trial court erred in excluding this evidence because that evidence shows Anderson incurred no loss for medical expenses related to the accident. The trial court excluded the evidence because the insurance was a collateral source.

The insurance arrangement was under Travelers Group Policy No. GA2300. This policy was obtained pursuant to a health and welfare agreement between participating rail carriers and numerous railway labor organizations, including the Brotherhood of Locomotive Engineers of which appellant is a member. BN argues that evidence of benefits obtained by Anderson through this policy should be admitted because the insurance is not a collateral source. For proof that the insurance is not a collateral source, BN points to the health and welfare agreement which specifically states:

> . . . The parties . . . intend that
> benefits provided under the policy
> contract will satisfy any right of

recovery against the employing railroad for such benefits to the extent of the benefits so provided. Accordingly, --(1) Benefits provided under the policy contract will be offset against any right of recovery the employee may have against the employing railroad for hospital, surgical, medical or related expenses of any kind specified in the policy contract.

The collateral source rule has been applied in an FELA setting by the federal circuit courts with the only question being whether the insurance is in fact a collateral source. See generally Patterson v. Norfolk and Western Railway Co. (6th Cir. 1973), 489 F.2d 303; Blake v. Delaware and Hudson Railway Co. (2nd Cir. 1973), 484 F.2d 204. Title 45 U.S.C. § 55 of the FELA broadens application of the collateral source rule with respect to the circumstances in the instant case. That statute is as follows:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: Provided, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

The United States District Court for the District of Montana has recently interpreted this statute as it applies to the same health and welfare agreement we are dealing with here in an order issued by Chief Judge Battin in the case of John L. Herbst v. Burlington Northern Railroad Co., CV-84-51-BLG. Judge Battin determined that 45 U.S.C. § 55 allows BN to "set off only the premiums, not what the premiums bought" and prevents BN "from contracting away the benefits of § 55 as

12

was attempted by the Health and Welfare Agreement between the union and the railroad." As a result, Judge Battin granted Herbst's motion in limine to prevent introduction of medical expenses already paid by BN and its insurance company. We will follow Judge Battin's interpretation of 45 U.S.C. § 55 and hold that the provision of the collective bargaining agreement relied upon by BN is void. Accordingly, the collateral source rule applies to the paid medical expenses, and the trial court properly prevented introduction of evidence as to their payment.

## VI

Along with the jury verdict for damages of $195,000, the District Court added a directed verdict of $11,795.25 for medical expenses. However, the District Court's jury Instruction No. 12 states:

> . . . The amount of any award shall include:
>
> 1. The reasonable value of medical care, services and supplies reasonably required and actually given in the treatment of Plaintiff . . .

BN complains that this instruction plus the directed verdict and the insurance paid medical expenses results in triple recovery by Anderson for incurred medical expenses. The point is well taken.

It is reversible error to instruct a jury to include medical expenses in its award and then to add a directed verdict for the same medical expense on top of the jury award.

We therefore affirm the judgment for $195,000 but reverse the directed verdict of $11,795.25.

_____
Chief Justice

13

We concur:

_John Conway Harrison_

_William E. Hunt_

_Fred J. Weber_

_Frank B. Morrison_

_L. C. Gulbrandson_
Justices

_Jack L. Green_
Hon. Jack L. Green, District
Judge, sitting in place of Mr.
Justice John C. Sheehy, who
deems himself disqualified

14