No. **94-298**

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

A. C. LEWIS, d/b/a SCORPION MANUFACTURING,

      Plaintiff and Appellant,

  v.

NINE MILE MINES, INC., and NORTH LILY,

      Defendants and Respondents.

NINE MILE MINES, INC.,

      Third-Party Plaintiff,

  v.

CHARLES B. DOTEN,

      Third-Party Defendant.

FILED

DEC 08 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John W. Larson, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Jon R. Binney, Milodragovich, Dale & Dye, P.C.,
Missoula, Montana

      For Respondent:

          Christopher B. Swartley, Datsopoulos, MacDonald
Lind, Missoula, Montana: William B. Kebe, Johnson,
Skakles & Kebe, Butte, Montana


               Submitted on Briefs:  October 28, 1994

                      Decided:  December 8, 1994

Filed:

_____
Clerk

Chief Justice J. A. **Turnage** delivered the Opinion of the Court.

A.C. Lewis appeals the decision of the Fourth Judicial District Court, Missoula County, granting partial summary judgment in favor of Nine Mile Mines, Inc. We affirm.

The sole issue is whether the District Court erred in determining, as a matter of law, that Lewis was not entitled to damages under § 30-2-713, MCA, nor consequential damages under § 30-2-712 or -715, MCA.

On June 25, 1990, Lewis entered into an agreement to log timber from thirteen patented mining claims located near Missoula, Montana, owned by Nine Mile and operated by a mining company called North Lily. Lewis agreed to pay Nine Mile $70.00 per thousand board feet (**$70/mbf**) for the timber located on the Nine Mile Mine. The parties also agreed to continue negotiating a deal for the timber rights to ten adjacent, patented mining claims known as the **Martina** Mine. The agreement between Lewis and Nine Mile contained a non-interference clause, prohibiting Lewis from interfering with Nine Mile's or North Lily's mining operations or explorations.

During this same period, Lewis also negotiated a logging agreement with the Midas Mine in Lincoln County, Montana. This contract was negotiated before, but signed after, Lewis entered into the logging agreement with Nine Mile. Pursuant to the Midas contract, Lewis paid Midas **$50/mbf** for the timber. Lewis sold the Midas timber to Champion International in Libby, Montana, for **$200/mbf**, resulting in a **$150/mbf** profit.

2

Shortly after entering into the Nine Mile logging agreement, Nine Mile accused Lewis of staking unpatented mining claims adjacent to the Nine Mile and **Martina** Mines in apparent violation of the non-interference clause. Nine Mile also claimed that it discovered that Lewis did not have sufficient *logging* equipment to adequately complete the project. Nine Mile refused to allow Lewis to enter the property to remove the timber. In October 1991 Lewis brought this suit, claiming breach and anticipatory repudiation of the logging contract. Lewis also sued North Lily for tortious interference with contract. North Lily moved for, and the District Court granted, summary judgment on the tortious interference with contract claim.

On December 3, 1993, Nine Mile moved for summary judgment on the issue of damages. Nine Mile alleged that if the court found that it breached the logging contract, Lewis should not be entitled to consequential damages or lost profits.

Oral argument was set for January 26, 1994. During oral argument Lewis attempted to establish the market value for timber during the summer of 1990, but failed to introduce any independent evidence to verify his assertions. Following the oral argument, Lewis moved the District Court to continue its ruling on Nine Mile's summary judgment motion on the grounds that he had attempted, but had been unable, to schedule the necessary depositions of lumber company officials who could establish the market value of timber in the summer of 1990. The District Court denied Lewis's

motion to continue, stating that Lewis had over two years since the filing of the complaint to produce evidence of the market value of timber in the Missoula area in the summer of 1990 but failed to do so. The court held that Lewis did not file affidavits stating why he was unable to take the necessary depositions in a timely manner. The court refused to consider the affidavit of Lewis's witness, Stephen Haas, as it also was filed in an untimely manner.

The District Court granted Nine Mile's motion for summary judgment on the issue of damages. The court determined that Nine Mile had met its burden of establishing the market price for timber in the summer of 1990 as $70/mbf and Lewis had come forward with no evidence to rebut this. The court held that since Lewis did not procure substitute timber to cover for the loss of the Nine Mile contract, did not establish a question of fact as to the market price of timber in the summer of 1990, and did not have general or particular requirements for the timber from the Nine Mile contract, he is entitled to no consequential damages or lost profits under Montana's version of the Uniform Commercial Code. Lewis appeals. We affirm.

Did the District Court err in determining, as a matter of law, that Lewis was not entitled to damages under § 30-z-713, MCA, nor consequential damages under § 30-2-712 or -715, MCA?

A district court may grant a summary judgment motion when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.

4

This Court's standard of review of a summary judgment motion is the same as that of the district court. Minnie v. City of Roundup (1993), 257 Mont. 429, 849 P.2d 212. The moving party must establish that there is a "complete absence of any genuine issue of material fact." D'Agostino v. Swanson (1990), 240 Mont. 435, 442, 784 P.2d 919, 924. While the initial burden is on the movant, the non-moving party must then produce some evidence which shows a genuine issue of fact is in question. This can be done through sworn testimony or affidavits. First Security Bank of Anaconda v. Vander Pas (1991), 250 Mont. 148, 152, 818 P.2d 384, 386. Mere conclusionary or speculative statements will not raise a genuine issue of material fact. Anderson v. Burlington Northern, Inc. (1985), 218 Mont. 456, 462, 709 P.2d 641, 645. In Palin v. Gebert Logging, Inc. (1986), 220 Mont. 405, 716 P.2d 200, we stated, "summary judgment is proper when the party opposing the motion fails either to raise or to demonstrate the existence of the genuine issue of material fact, or to demonstrate that the legal issue should not be determined in favor of the movant." Palin, 716 P.2d at 202.

The provisions of the Uniform Commercial Code, as adopted in Montana, apply to the sale of timber. Palin, 716 P.2d at 202. Sections 30-2-711, -712, -713, and -715, MCA, govern a buyer's potential damages when a seller breaches a contract for the sale of goods. Under these statutes, a buyer has two options when a seller breaches a sales contract. First, the buyer can cover by purchas-

ing substitute goods and recover the difference between cover price and the contract price. Alternatively, the buyer can recover the difference between the market price and the contract price. R.B. Matthews v. Transamerica Transportation Services, Inc. (9th Cir. 1991), 945 F.2d 269, 274-75; §§ 30-2-711, -712, -713, and -715, MCA.

Section 30-2-712, MCA, states:

> "Cover"--buyer's procurement of substitute goods. (I) After a breach within the preceding section the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.
>
> (2) The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental and consequential damages as hereinafter defined (30-2-715), but less expenses saved in consequence of the seller's breach.
>
> (3) Failure of the buyer to effect cover within this section does not bar him from any other remedy.

In this case Lewis did not purchase substitute timber to cover for the loss of the Nine Mile timber. The Midas contract does not constitute cover for the Nine Mile contract. The terms of the Midas contract were negotiated prior to Nine Mile's alleged breach. The Midas contract was therefore intended as a timber cutting project in addition to the Nine Mile project, not to replace it.

Lewis's failure to cover likewise affects his right to recover consequential damages under § 30-2-715, MCA. This section states:

**Buyer's incidental and consequential damages. . . .**

(2) Consequential damages resulting from the seller's breach include:

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know <u>and which could not reasonably be **prevented** by cover or otherwise</u>: . . . [Emphasis added.]

Lewis did not procure cover, nor did he show that he could not have reasonably procured such cover.

Lewis cites several cases which stand for the proposition that if the buyer is unable to cover due to scarcity of the product or other market forces, he may still recover consequential damages. <u>See, e.g.</u> Jewell-Rung Agency, Inc. v. Haddad Org., Ltd. (S.D.N.Y. 1993), 814 F.Supp. 337; R.B. Matthews v. Transamerica Transportation Service, Inc. (9th Cir. 1991), 945 F.2d 269; Calbag Metals Co. v. Guy F. Atkinson Co. (Or.App. 1989), 770 P.2d 600. However, each of these cases is distinguishable in that the buyers presented evidence that, due to some market force beyond their control, they were unable to reasonably cover following the seller's breach. As we discuss further in this opinion, Lewis presented no evidence which established the market price of timber in the summer of 1990. Lewis failed to show, through reasonable means, that there existed a timber shortage in the summer of 1990 which precluded procuring cover for the Nine Mile timber. Lewis had over two years in which to acquire such information, yet failed to do so. He relied on his own speculative testimony concerning the availability of substitute timber. Such testimony is insufficient to raise a genuine issue as

to a material fact. Apparently realizing he failed to create a question of fact on this point, Lewis asked this Court to "take judicial notice of the dramatically-rising prices from 1990 on and the scarcity of timber supply all over the northwest, including Western Montana." This request is clearly beyond the scope of Rule 201, M.R.Evid.

Lewis is further barred from recovering consequential damages under § 30-2-715, MCA, because he has failed to raise a question of material fact concerning any general or specific requirements he had for the Nine Mile timber. Lewis had not contracted to resell the Nine Mile timber at the time he learned of the alleged breach. He had not received any price quotes from lumber mills for the timber, nor did he have any potential buyers view the timber at the Nine Mile Mine in preparation for making a bid. Lewis clearly did not have any general or specific requirements for the Nine Mile timber at **the** *time* of the alleged breach, thus precluding recovery of consequential damages under § 30-2-715, MCA.

Lewis's other option is to seek damages pursuant to § 30-2-713, MCA. This section **states:**

> Buyer's **damages for nondelivery or repudiation.**
> **(1)** Subject to the provisions of this chapter with respect to proof of market price (30-2-723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this chapter (30-2-715), but less expenses saved in consequence of the seller's breach.

8

        (2)   Market price is to be determined as of the
    place of tender or, in cases of rejection after arrival
    or revocation of acceptance, as of the place of arrival.

The place of tender in this case was the Nine Mile Mine located in Missoula County. Nine Mile presented evidence that the market price for the timber was $70/mbf. This price was established by introducing the logging agreement between Lewis and Nine Mile which set the price at $70/mbf. Lewis failed to create a question of fact that the price for similar timber in Missoula County during the summer of 1990 was higher than $70/mbf.

Lewis introduced the sale of the Midas timber to attempt to establish the market price as $200/mbf. However, the Midas timber was located in Lincoln County, a substantial distance from Missoula County. The District Court stated that, "[g]iven the nature of the logging industry and the distance between Lincoln and Missoula Counties, Lincoln County can not be considered a reasonable substitute market for Missoula County." Lewis admitted that the lumber mill which purchased the Midas timber would not purchase the Nine Mile timber.

The speculative testimony of Lewis that he intended to sell the Nine Mile timber for more than $70/mbf does not create a question of fact as to the market price in Missoula County in the summer of 1990. Nor does the testimony of Lewis's witness, Stephen Haas, that a price of $200/mbf for timber in the summer of 1990 would not surprise him, create such a question of fact. As previously stated, mere speculative and conclusionary statements do

9

not create a question of material fact. First Security Bank of Anaconda v. Vander Pas (1991), 250 Mont. 148, 152, 818 P.2d 384, 386. Lewis presented no evidence which established that the price of comparable timber in Missoula County in the summer of 1990 was greater than $70/mbf. Since the District Court found that the market price was equal to the contract price, there are no damages available under § 30-z-713, MCA.

We conclude that the District Court did not err in granting Nine Mile's summary judgment motion precluding Lewis from recovering damages under § 30-z-713, MCA, or consequential damages under § 30-2-712 or -715, MCA. Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

10

Justice William E. Hunt, Sr., dissenting.

I dissent from the majority opinion. Summary judgment is proper only when no genuine issue of material fact exists. Rule 56(c), M.R.Civ.P.; Spain-Morrow Ranch, Inc. v. West (1994), 261 Mont. 441, 442, 072 P.2d at 331-32. Conversely, if a genuine issue of material fact exists, summary judgment is not proper. The record shows that there exist genuine issues of material fact as to the damages suffered by Lewis, therefore, summary judgment was not proper.

The majority correctly states that when a seller breaches a contract for the sale of goods, the buyer can either recover the difference between the cost to cover and the contract price, along with any consequential and incidental damages, or the buyer can recover lost profits measured by the difference between the market price and the contract price, along with consequential and incidental damages. The second option is available to the buyer who chooses not to cover or who is unable to do so.

The majority affirmed the District Court's conclusion that Nine Mile met its burden by presenting evidence of stumpage in Missoula County in the summer of 1990 in the form of the $70/MBF price found in the logging agreement, and that Lewis failed to raise a genuine issue of fact of a market price higher than $70/MBF. Based on these conclusions, the District Court held that Lewis was not entitled to consequential damages in the form of lost profits under § 30-2-713, MCA. The record does not support these conclusions.

11

For the purposes of determining damages under § 30-2-713, MCA, the market price is to be determined as of summer 1990, Missoula County, the time and place of tender. However, if evidence of market price at the time and place of tender is not readily available, any other place within commercial judgment or under usage of trade may be used as a reasonable substitute. Section 30-2-723(2), MCA. Lewis testified as to his difficulty in procuring similar agreements in Missoula County on or about the time of the Nine Mile agreement. Lewis also testified as to the volatile and rising nature of the market at the time in question. Norman Schweizer, an expert for Nine Mile, testified that Nine Mile's timber was comparable, if not bigger, than the timber Lewis purchased from Midas Mines for $50/MBF and later sold to Champion International, Lincoln County, for $200/MBF. Stephen Haas, a senior accountant at Champion who reviewed contracts for purchases of timber on the stump and delivered to mills in Lincoln County and Missoula County, testified that he was confident that the average amount paid for stumpage in Missoula County in the summer of 1990 exceeded $70/MBF and that $200/MBF would not have surprised him.

As the party opposing the summary judgment, Lewis is entitled to have any inference drawn from the factual record resolved in his favor. Rucinsky v. Hentchel (Mont. 1994), 881 P.2d 616, 618, 51 St. Rep. 887, 888; Boylan v. Van Dyke (1991), 247 Mont. 259, 266, 806 P.2d 1024, 1028. The testimony of Haas and Schweizer as to market price is part of the factual record. Based on their testimony, it is reasonable to infer that comparable, if not

12

bigger, timber from Nine Mile would have generated a comparable, if not better, MBF in Missoula County than the $200/MBF generated in Lincoln County. Resolving this inference in favor of Lewis raises a genuine issue of material fact as to the market price of stumpage in Missoula County in the summer of 1990, and consequently, raises a genuine issue of fact as to whether Lewis is entitled to damages for lost profits under § 30-2-713, MCA.

The majority also affirmed the District Court's conclusion that Lewis was not entitled to consequential damages as defined by § 30-2-715(2)(a), MCA, which provides:

> (2) Consequential damages from the seller's breach include:
> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise . . .

The record shows that while Lewis did not cover following Nine Mile's breach, there is a factual question as to whether cover was possible. On or about the time Lewis negotiated the Nine Mile agreement, Lewis attempted unsuccessfully to secure six similar agreements. Lewis entered into the agreement with Nine Mile on June 25, 1990. Nine Mile breached 24 days later on July 18, 1990. However, the record shows that as early as July 3, 1990, eight days after executing the contract, Lewis was notified by Nine Mile that he would be prevented from exercising his rights under the contract. It is at least a factual issue whether the market conditions that prevented Lewis from securing similar contracts at

13

the time the contract with Nine Mile was executed existed days later and for a reasonable time thereafter.

In addition, there is nothing in the record to show that Nine Mile provided the District Court with evidence that substitute goods were available to Lewis following the breach. The burden of proof rests with the party seeking summary judgment to provide the court with evidence which excludes any real doubt as to the existence of a genuine issue of fact. Berens v. Wilson (1990), 246 Mont. 269, 271, 806 P.2d 14, 16. Only after the moving party has met this burden of proof does the burden shift to the nonmoving party to show that a genuine issue of fact exists. Morton v. M.W.M., Inc. (1994), 263 Mont 245, 249, 868 P.2d 576, 5'79. Nine Mile's failure to produce evidence which excludes any real doubt as to Lewis's reasonable ability to prevent consequential damages by covering, coupled with Lewis's testimony as to the scarcity of similar opportunities, raises a genuine issue of material fact.

Finally, the majority asserts that "Lewis is further barred from recovering consequential damages under § 30-2-715, MCA, because he failed to raise a question of material fact concerning any general or specific requirements he had for the Nine Mile timber." A review of the agreement between the parties demonstrates that Lewis's requirements for the timber were anticipated by the parties during negotiations and are implicit in the language of the final agreement which provides:

> As payment to the landowners of the logging agreement, A.C. Lewis shall pay to the landowners a stumpage rate of

14

$70/MBF for all merchantable timber to be removed from said mining claim.

> All such payment to the landowners shall be paid directly by the saw mills purchasing said timber produced from the Nine Mile claim.

(Emphasis added.) The record supports a conclusion that, as to the issues of requirements and consequential damages, there exist genuine issues of material fact.

I would reverse the District Court's granting of Nine Mile's motion for summary judgment.

_William E Hunt_
Justice


Justice Terry N. Trieweiler joins in the foregoing dissent.

_T m J Trieweiler_
Justice

15