CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
A.C. Lewis appeals the decision of the Fourth Judicial District Court, Missoula County, granting partial summary judgment in favor of Nine Mile Mines, Inc. We affirm.
*339 The sole issue is whether the District Court erred in determining, as a matter of law, that Lewis was not entitled to damages under § 30-2-713, MCA, nor consequential damages under § 30-2-712 or -715, MCA.
On June 25, 1990, Lewis entered into an agreement to log timber from thirteen patented mining claims located near Missoula, Montana, owned by Nine Mile and operated by a mining company called North Lily. Lewis agreed to pay Nine Mile $70.00 per thousand board feet ($70/mbf) for the timber located on the Nine Mile Mine. The parties also agreed to continue negotiating a deal for the timber rights to ten adjacent, patented mining claims known as the Martina Mine. The agreement between Lewis and Nine Mile contained a non-interference clause, prohibiting Lewis from interfering with Nine Mile’s or North Lily’s mining operations or explorations.
During this same period, Lewis also negotiated a logging agreement with the Midas Mine in Lincoln County, Montana. This contract was negotiated before, but signed after, Lewis entered into the logging agreement with Nine Mile. Pursuant to the Midas contract, Lewis paid Midas $50/mbf for the timber. Lewis sold the Midas timber to Champion International in Libby, Montana, for $200/mbf, resulting in a $150/mbf profit.
Shortly after entering into the Nine Mile logging agreement, Nine Mile accused Lewis of staking unpatented mining claims adjacent to the Nine Mile and Martina Mines in apparent violation of the noninterference clause. Nine Mile also claimed that it discovered that Lewis did not have sufficient logging equipment to adequately complete the project. Nine Mile refused to allow Lewis to enter the property to remove the timber. In October 1991 Lewis brought this suit, claiming breach and anticipatory repudiation of the logging contract. Lewis also sued North Lily for tortious interference with contract. North Lily moved for, and the District Court granted, summary judgment on the tortious interference with contract claim.
On December 3,1993, Nine Mile moved for summary judgment on the issue of damages. Nine Mile alleged that if the court found that it breached the logging contract, Lewis should not be entitled to consequential damages or lost profits.
Oral argument was set for January 26, 1994. During oral argument Lewis attempted to establish the market value for timber during the summer of 1990, but failed to introduce any independent evidence to verify his assertions. Following the oral argument, Lewis moved the District Court to continue its ruling on Nine Mile’s sum *340 mary judgment motion on the grounds that he had attempted, but had been unable, to schedule the necessary depositions of lumber company officials who could establish the market value of timber in the summer of 1990. The District Court denied Lewis’s motion to continue, stating that Lewis had over two years since the filing of the complaint to produce evidence of the market value of timber in the Missoula area in the summer of 1990 but failed to do so. The court held that Lewis did not file affidavits stating why he was unable to take the necessary depositions in a timely manner. The court refused to consider the affidavit of Lewis’s witness, Stephen Haas, as it also was filed in an untimely manner.
The District Court granted Nine Mile’s motion for summary judgment on the issue of damages. The court determined that Nine Mile had met its burden of establishing the market price for timber in the summer of 1990 as $70/mbf and Lewis had come forward with no evidence to rebut this. The court held that since Lewis did not procure substitute timber to cover for the loss of the Nine Mile contract, did not establish a question of fact as to the market price of timber in the summer of 1990, and did not have general or particular requirements for the timber from the Nine Mile contract, he is entitled to no consequential damages or lost profits under Montana’s version of the Uniform Commercial Code. Lewis appeals. We affirm.
Did the District Court err in determining, as a matter of law, that Lewis was not entitled to damages under § 30-2-713, MCA, nor consequential damages under § 30-2-712 or -715, MCA?
A district court may grant a summary judgment motion when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.R This Court’s standard of review of a summary judgment motion is the same as that of the district court. Minnie v. City of Roundup (1993), 257 Mont. 429, 849 P.2d 212. The moving party must establish that there is a “complete absence of any genuine issue of material fact.” D’Agostino v. Swanson (1990), 240 Mont. 435, 442, 784 P.2d 919, 924. While the initial burden is on the movant, the non-moving party must then produce some evidence which shows a genuine issue of fact is in question. This can be done through sworn testimony or affidavits. First Security Bank of Anaconda v. Vander Pas (1991), 250 Mont. 148, 152, 818 P.2d 384, 386. Mere conclusionary or speculative statements will not raise a genuine issue of material fact. Anderson v. Burlington Northern, Inc. (1985), 218 Mont. 456, 462, 709 P.2d 641, 645. In Palin v. Gebert Logging, Inc. (1986), 220 Mont. 405, 716 P.2d 200, we stated, *341 “summary judgment is proper when the party opposing the motion fails either to raise or to demonstrate the existence of the genuine issue of material fact, or to demonstrate that the legal issue should not be determined in favor of the movant.” Palin, 716 P.2d at 202.
The provisions of the Uniform Commercial Code, as adopted in Montana, apply to the sale of timber. Palin, 716 P.2d at 202. Sections 30-2-711, -712, -713, and -715, MCA, govern a buyer’s potential damages when a seller breaches a contract for the sale of goods. Under these statutes, a buyer has two options when a seller breaches a sales contract. First, the buyer can cover by purchasing substitute goods and recover the difference between cover price and the contract price. Alternatively, the buyer can recover the difference between the market price and the contract price. R.B. Matthews v. Transamerica Transportation Services, Inc. (9th Cir. 1991), 945 F.2d 269, 274-75; §§ 30-2-711, -712, -713, and -715, MCA.
Section 30-2-712, MCA, states:
“Cover” — buyer’s procurement of substitute goods. (1) After a breach within the preceding section the buyer may “cover” by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.
(2) The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental and consequential damages as hereinafter defined (30-2-715), but less expenses saved in consequence of the seller’s breach.
(3) Failure of the buyer to effect cover within this section does not bar him from any other remedy.
In this case Lewis did not purchase substitute timber to cover for the loss of the Nine Mile timber. The Midas contract does not constitute cover for the Nine Mile contract. The terms of the Midas contract were negotiated prior to Nine Mile’s alleged breach. The Midas contract was therefore intended as a timber cutting project in addition to the Nine Mile project, not to replace it.
Lewis’s failure to cover likewise affects his right to recover consequential damages under § 30-2-715, MCA. This section states:
Buyer’s incidental and consequential damages....
(2) Consequential damages resulting from the seller’s breach include:
*342 (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; ... [Emphasis added.]
Lewis did not procure cover, nor did he show that he could not have reasonably procured such cover.
Lewis cites several cases which stand for the proposition that if the buyer is unable to cover due to scarcity of the product or other market forces, he may still recover consequential damages. See, e.g. Jewell-Rung Agency, Inc. v. Haddad Org., Ltd. (S.D.N.Y. 1993), 814 F.Supp. 337; R.B. Matthews v. Transamerica Transportation Service, Inc. (9th Cir. 1991), 945 F.2d 269; Calbag Metals Co. v. Guy F. Atkinson Co. (Or.App. 1989), 770 P.2d 600. However, each of these cases is distinguishable in that the buyers presented evidence that, due to some market force beyond their control, they were unable to reasonably cover following the seller’s breach. As we discuss further in this opinion, Lewis presented no evidence which established the market price of timber in the summer of 1990. Lewis failed to show, through reasonable means, that there existed a timber shortage in the summer of 1990 which precluded procuring cover for the Nine Mile timber. Lewis had over two years in which to acquire such information, yet failed to do so. He relied on his own speculative testimony concerning the availability of substitute timber. Such testimony is insufficient to raise a genuine issue as to a material fact. Apparently realizing he failed to create a question of fact on this point, Lewis asked this Court to “take judicial notice of the dramatically-rising prices from 1990 on and the scarcity of timber supply all over the northwest, including Western Montana.” This request is clearly beyond the scope of Rule 201, M.R.Evid.
Lewis is further barred from recovering consequential damages under § 30-2-715, MCA, because he has failed to raise a question of material fact concerning any general or specific requirements he had for the Nine Mile timber. Lewis had not contracted to resell the Nine Mile timber at the time he learned of the alleged breach. He had not received any price quotes from lumber mills for the timber, nor did he have any potential buyers view the timber at the Nine Mile Mine in preparation for making a bid. Lewis clearly did not have any general or specific requirements for the Nine Mile timber at the time of the alleged breach, thus precluding recovery of consequential damages under § 30-2-715, MCA.
*343 Lewis’s other option is to seek damages pursuant to § 30-2-713, MCA. This section states:
Buyer’s damages for nondelivery or repudiation. (1) Subject to the provisions of this chapter with respect to proof of market price (30-2-723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this chapter (30-2-715), but less expenses saved in consequence of the seller’s breach.
(2) Market price is to be determined as of the place of tender or, in cases of rejection after arrival or revocation of acceptance, as of the place of arrival.
The place of tender in this case was the Nine Mile Mine located in Missoula County. Nine Mile presented evidence that the market price for the timber was $70/mbf. This price was established by introducing the logging agreement between Lewis and Nine Mile which set the price at $70/mbf. Lewis failed to create a question of fact that the price for similar timber in Missoula County during the summer of 1990 was higher than $70/mbf.
Lewis introduced the sale of the Midas timber to attempt to establish the market price as $200/mbf. However, the Midas timber was located in Lincoln County, a substantial distance from Missoula County. The District Court stated that, “[g]iven the nature of the logging industry and the distance between Lincoln and Missoula Counties, Lincoln County can not be considered a reasonable substitute market for Missoula County.” Lewis admitted that the lumber mill which purchased the Midas timber would not purchase the Nine Mile timber.
The speculative testimony of Lewis that he intended to sell the Nine Mile timber for more than $70/mbf does not create a question of fact as to the market price in Missoula County in the summer of 1990. Nor does the testimony of Lewis’s witness, Stephen Haas, that a price of $200/mbf for timber in the summer of 1990 would not surprise him, create such a question of fact. As previously stated, mere speculative and conclusionary statements do not create a question of material fact. First Security Bank of Anaconda v. Vander Pas (1991), 250 Mont. 148, 152, 818 P.2d 384, 386. Lewis presented no evidence which established that the price of comparable timber in Missoula County in the summer of 1990 was greater than $70/mbf. *344 Since the District Court found that the market price was equal to the contract price, there are no damages available under § 30-2-713, MCA.
We conclude that the District Court did not err in granting Nine Mile’s summary judgment motion precluding Lewis from recovering damages under § 30-2-713, MCA, or consequential damages under § 30-2-712 or -715, MCA. Affirmed.
JUSTICES HARRISON, GRAY, NELSON and WEBER concur.