Diana L. BELL, both personally and as Personal Representative of the Estate of Miguel A. Bell, deceased, Plaintiff,

v.

GLOCK, INC., (USA), and Glock Gies.m.b.H, (Austria) Defendants.

No. CV9783MDWM.

United States District Court, D. Montana, Missoula Division.

March 28, 2000.

Alan J. Lerner, Law Offices of Alan J. Lerner, Kalispell, MT, Edward P. Moriarity, Spence Moriarity & Schuster, Jackson, WY, Evan F. Danno, Law Offices of Evan F. Danno, Kalispell, MT, Michael A. Viscomi, Viscomi Law Office, Kalispell, MT, Shandor S. Badaruddin, Badaruddin Law Office, Atlanta, GA, for Diana L. Bell, both personally, and as Personal Representative of the Estate of Miguel A. Bell, deceased, plaintiffs.

John F. Renzulli, Christopher P. Orlando, Renzulli & Rutherford, New York, NY, William E. Jones, Peter J. Stokstad, Garlington, Lohn & Robinson, PLLP, Missoula, MT, for Glock, Inc. (USA), Glock Gies. M.B.H (Austria), defendants.

## ORDER

MOLLOY, District Judge.

## I. FACTS:

On May 28, 1994, Adam Elder (Elder) shot and killed Miguel Bell (Bell) with a Glock Model 20 10mm handgun (serial # ALC943US). At the time of the incident, Elder was 14 years old. This Glock Model 20 pistol was designed and manufactured by GLOCK, GIES.m.b.h, an Austrian Corporation, imported and sold to GLOCK, INC., an American Corporation, and was eventually sold by Sportsman Ski Haus in Kalispell to Daniel Geelan (Geelan), Elder's stepfather.

Elder and Bell entered Elder's parents bedroom looking for sleeping bags to take on a camping trip. While in the room, Elder removed his stepfather's Glock 10mm pistol from the holster, which was hanging on the bed frame. Elder pointed the pistol at Bell and pulled the trigger. Elder testified that he did not intend to harm Bell. He thought the gun was unloaded, and he only wanted to hear the "click." However, the pistol fired when Elder pulled the trigger, and the bullet struck Bell in the face. Miguel Bell died a short time later.

The Glock Model 20 handgun is a semi-automatic 10mm pistol with a "Safe Action" trigger system. That system consists of one external and two internal safeties, which function automatically to prevent the pistol from firing unless the trigger is pulled. The Model 20 does not have a conventional manual external safety or a loaded chamber indicator.

The Model 20's external trigger safety allows the gun to fire when the correct angle of pressure is placed on the trigger. In other words, the external trigger safety is designed to prevent the gun from firing if something smaller than a finger sized object snags the trigger. The two internal safety mechanisms on the Model 20 are designed to prevent the firing pin from moving forward unless the trigger is pulled. The two internal safeties are disengaged when the trigger is pulled and are supposed to prevent discharge if the pistol is dropped or jarred in some manner. The Glock Model 20 pistol has no manual safety and it will fire if someone pulls the trigger.

## II. DISCUSSION:

Plaintiff moves for partial Summary Judgment on Defendants' Fourth Affirmative Defense, third-party apportionment/causation; its Fifth Affirmative Defense, assumption of risk; and its Sixth Affirmative Defense, misuse (doc. # 74). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Based upon the following reasoning, Plaintiff is entitled to judgment as a matter of law on Defendants' Fourth, Fifth and Sixth Affirmative Defenses.

### A. Fourth Affirmative Defense: Third–Party Apportionment

### 1. The "Empty Chair"

Defendants' Fourth Affirmative Defense states that "the amount of damages recovered, if any, shall ... be diminished in that proportion which said culpable conduct attributable to the aforementioned third parties bears to the culpable conduct which caused said damages and injuries." Answer at 6. This affirmative defense invokes apportionment of liability based upon the actions of unnamed third parties.

Because this defense and other issues in this case raise questions related to Montana's prohibition of the "empty chair defense," a brief background is necessary. Mont.Code Ann. § 27–1–703 governs the determination of liability among multiple parties. Plaintiff is correct in her contention that the 1993 version of Mont. Code Ann. § 27–1–703 applies to this case, because Bell's death occurred on May 28, 1994. The statute that existed on the date of injury governs the substantive rights of

the parties. *Cadwell v. Bechtel Power Corp.*, 225 Mont. 423, 732 P.2d 1352 (Mont. 1987). Furthermore, a statute is not applied retroactively unless the legislature clearly expressed its intent to do so. *Id.* at 425, 732 P.2d at 1354.

The 1993 version of Mont.Code Ann. § 27–1–703 was enacted by the legislature in 1987. It allowed the jury to apportion liability among defendants, third-party defendants and, inter alia, persons released from liability. In 1994, the Montana Supreme Court struck down the portion of § 703 which allowed apportionment of liability to nonparties. *Newville v. State, Dep't of Family Servs.*, 267 Mont. 237, 883 P.2d 793 (1994). The *Newville* Court analyzed the version of § 703 that applies in the present case and reasoned that apportioning liability to nonparties violated due process by forcing plaintiffs to prepare a defense for the nonparties. *Id.* at 252, 883 P.2d at 802. Through its holding in *Newville*, the Montana Supreme Court precluded defendants from pointing the finger at an "empty chair."

In 1995, this issue was addressed again. In *Plumb v. Fourth Jud. Dist. Court*, 279 Mont. 363, 927 P.2d 1011 (1996), the Montana Supreme Court held that a defendant may not use the negligence of an unnamed third party to reduce its own liability. Although *Plumb* addressed the 1995 amendments to § 703, the Court focused on the same concern that was addressed in *Newville* and was again present in the 1995 version of § 703, the lack of due process where an unnamed third party is not represented in a case. *Id.* at 376, 927 P.2d at 1019. The Court again cited the "potential for disproportionate assignment of liability to an unnamed, unrepresented, and non-

participating third person" as a violation of due process.[1] *Id.*

■ In the present case, Plaintiff moves for Summary Judgment on the grounds that Defendants' Fourth Affirmative Defense violates the prohibition against the empty chair defense. Neither Elder nor Geelan will be represented in the trial of this case. Defendants' Fourth Affirmative Defense is directed at the conduct of unnamed third parties. Therefore, *Plumb* precludes it. Glock had sufficient time and opportunity to join Elder and his stepfather but elected otherwise. Because Montana law applies in this diversity case, the defense is not available, and any proof tending to establish it is not relevant to the issues that remain. Plaintiff is entitled to summary judgment as a matter of law on this Defense as it relates to apportioning liability among any actors other than the named parties.

### 2. Intervening/Superseding Cause

Defendants contend that this case involves an intervening or superseding cause, which makes foreseeability an issue and allows them to present evidence related to Elder's and Geelan's actions. Plaintiff objects to Defendants' assertion of intervening or superseding cause as an affirmative defense because it was not specifically pled in the answer. *See* Fed. R.Civ.P. 8(c) (requiring that affirmative defenses must be pled.) Arguably, Defendants' Third Affirmative Defense can be construed as an allegation of intervening or superseding cause.

"An intervening cause is one in which the facts indicate that a force came into

---

1. Although Mont.Code Ann. § 27–1–703 refers to claims made in negligence, the reasoning of the Montana Supreme Court in *Newville* and *Plumb* also applies to strict products liability claims. Allowing a Defendant in a products liability claim to lay blame on an unnamed, unrepresented, and nonparticipating third party creates the potential for a disproportionate allocation of blame to the third party. Furthermore, in *Lutz v. National Crane Corp.*, 267 Mont. 368, 884 P.2d 455

(Mont.1994), the Montana Supreme Court said the negligence of the plaintiff or third parties is not a defense to a strict liability claim. The only affirmative defenses available are those articulated in Mont.Code Ann. § 27–1–719. The present version of § 719 prohibits the defense of contributory negligence in a products liability claim. The two narrow exceptions to this prohibition misuse and assumption of risk—are discussed in the following sections.

motion after the time of the *defendant's negligent act* and combined with [another] negligent act to cause the injury to the plaintiff." *Cusenbary v. Mortensen,* 1999 MT 221, ¶ 26, 987 P.2d 351, 356 (Mont. 1999) (emphasis added). Plaintiff, in this case, does not allege that Defendants were negligent. Rather, the claims at hand allege strict liability for defective design and failure to warn.

■ Mont.Code Ann. § 27–1–719 limits the defenses that may be asserted in a products liability claim. The statute provides that contributory negligence is not a defense to liability except to the extent provided by § 719(5), which addresses assumption of risk and misuse.[2] Moreover, in *Lutz v. National Crane Corp.,* 267 Mont. 368, 884 P.2d 455 (Mont.1994), the Montana Supreme Court held that "contributory negligence is not a defense in a strict liability action." *See id.* at 382, 884 P.2d at 463. Therefore, the defenses of intervening and superseding cause are not proper defenses in this case. Because the definition of an intervening/superseding cause assumes that the defendant is facing a negligence claim and because this is a strict liability case, the law precludes the defense of intervening/superseding cause. There is no proof that Miguel Bell "assumed the risk" of his own death. The gun itself was arguably being "misused" in a foreseeable manner.[3] Furthermore, Miguel Bell was allegedly injured by the defective design of the Glock 10–mm, not by any act or use of the product by him. Plaintiff is entitled to summary judgment on Defendants' Fourth Affirmative Defense.

### 3. Causation

*Newville, Plumb,* and *Lutz* leave open the question of Glock's ability to negate Plaintiff's case as to causation. The question is to what extent is Glock permitted to offer proof about the prima facie element of causation.

This case must steer a course among competing tenets of law. On the one hand, the Plaintiff must prove that design defects in the Glock Model 20 were a substantial factor in causing the death of Miguel Bell, and Defendants are entitled to dispute that causation element. On the other hand, Montana law prohibits Defendants from negating the causation element by introducing evidence or by arguing that the conduct of unnamed third parties were the real cause of Plaintiff's injury.

---

**2.** Mont.Code Ann. § 27–1–719(5) provides:

Except as provided in this subsection, contributory negligence is not a defense to the liability of a seller, based on strict liability in tort, for personal injury or property damage caused by a defectively manufactured or defectively designed product. A seller named as a defendant in an action based on strict liability in tort for damages to person or property caused by a defectively designed or defectively manufactured product may assert the following affirmative defenses against the user or consumer, the legal representative of the user or consumer, or any person claiming damages by reason of injury to the user or consumer:

(a) The user or consumer of the product discovered the defect or the defect was open and obvious and the user or consumer unreasonably made use of the product and was injured by it.

(b) The product was unreasonably misused by the user or consumer and such misuse caused or contributed to the injury.

**3.** In *Cusenbary,* the Montana Supreme Court held that, as a matter of law, it was foreseeable that a bar's customer, who was so intoxicated that he could no longer operate his wheelchair, would attempt to drive. "Wells' drunken conduct was not freakish, bizarre, or unpredictable." 1999 MT 221 at ¶ 30, 987 P.2d at 356. Elder's conduct appears similarly foreseeable. Because this is a strict liability case, that Elder "arguably" misused Glock's product is not a defense to Bell's claims, so the question of foreseeability does not block Plaintiff's motion for summary judgment.

(6) The affirmative defenses referred to in subsection (5) mitigate or bar recovery and must be applied in accordance with the principles of comparative negligence set forth in 27–1–702. (Terminates on occurrence of contingency—sec. 11(2), Ch. 429, L.1997.)

■ The facts of the incident itself are admissible. Any reasonable inference that can be argued from those facts is permissible, so long as it goes to the negation of cause, not to its attribution to some third party. In other words, proof of what third-party conduct should have occurred is not relevant. Nor is proof about gun safety relevant, absent the presence of Elder or his stepfather. Defendants are not prohibited from introducing evidence of Elder's or Geelan's conduct as that relates to what happened in the incident, the background facts leading to the incident, or to rebut Plaintiff's claim that one or more of the alleged defects was a substantial factor in bringing about the Plaintiff's death.

## B. Fifth Affirmative Defense: Assumption of Risk

Defendants' Fifth Affirmative Defense states that all risks and damages connected with the incident were obvious, apparent, and known to Plaintiff, who assumed the risk of his injuries. *See* Answer at 6 (doc. # 20). As evidenced by the language of Mont.Code Ann. § 27–1–719, and by Defendants' lack of response to Plaintiff's motion for summary judgment on this defense, the defense of assumption of risk does not apply in this case.

■ Mont.Code Ann. § 27–1–719(5)(a) allows defendants to raise as a defense to a products liability claim that the "user" or "consumer" assumed the risk associated with the product. As defense counsel conceded at oral argument, Bell was not a consumer. *See* Transcript of Oral Argument, July 30, 1999, at 56. Nor was he a user of the Glock pistol. The gun was aimed and fired at him. There is no evidence that Bell invited Elder to point the gun at him and fire. There is no suggestion that Bell was suicidal. Assumption of risk does not apply to Bell's actions.

Assuming, without deciding, that assumption of risk could be a defense to Plaintiff's claims if Elder and Geelan were named in this action, defenses based on contributory negligence are not effective against Plaintiff, who brings the action in strict liability.

Plaintiff's motion for Summary Judgment on Defendants' Fifth Affirmative Defense is granted.

## C. Sixth Affirmative Defense: Misuse

■ Defendants' Sixth Affirmative Defense states that all injuries and damages were caused by misuse of the product. *See* Answer at 6 (doc. # 20). Mont.Code Ann. § 27–1–719(5)(b) allows defendants to raise as a defense to a products liability claim that the users or consumers unreasonably misused the product. As discussed above, Bell was neither a "user" nor a "consumer" of this product. Therefore, the defense of misuse does not apply to his conduct. To the extent Defendants intend to apply the affirmative defense of misuse to Elder's or Geelan's conduct, *Plumb* and *Newville* prohibit them from doing so. Furthermore, Defendants failed to respond to Plaintiff's motion on this issue, signaling their concession that the motion is well-taken. *See* Local Rule 220–1(i). Where Montana law disallows the defense of misuse when the plaintiff is a direct user of a product so long as the misuse is foreseeable, it is illogical to assert that a third party's foreseeable misuse is a defense to a products liability claim. Plaintiff is entitled to summary judgment on Defendants' Sixth Affirmative Defense.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment on Defendants' Fourth, Fifth and Sixth Affirmative Defenses (doc. # 74) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall notify the parties of the making of this Order.