No. 01-621

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 91

KESSLEY DAWN TRUMAN,

Relator,

v.

MONTANA ELEVENTH JUDICIAL DISTRICT COURT,
FLATHEAD COUNTY, THE HONORABLE TED O. LYMPUS,
PRESIDING JUDGE,

Respondent.

ORIGINAL PROCEEDING:        Writ of Supervisory Control,
In and for the County of Flathead, Cause No. DV 99-088 (A),
The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

       For Relator:

            James T. Towe, Milodragovich, Dale, Steinbrenner & Binney, P.C., Missoula, Montana

            Lloyd A. Herman, Lloyd A. Herman & Associates, P.C., Spokane, Washington

       For Respondent (Montana Eleventh Judicial District Court):

            Honorable Ted O. Lympus, District Judge, Kalispell, Montana

       For Respondent (Scott Howard McGuffie):

            Katherine P. Maxwell, Johnson, Berg, McEvoy & Bostock, PLLP, Kalispell, Montana

Submitted: December 28, 2001
Decided: April 21, 2003

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1    The Plaintiff, Kessley Truman, filed a complaint in the District Court for the Eleventh Judicial District in Flathead County, in which she alleged that the Defendant, Scott McGuffie, was liable for damages she suffered in an automobile accident. Truman filed a motion for summary judgment and requested that the District Court prohibit the Defendant from asserting a non-party affirmative defense and from presenting evidence of subsequent accidents at trial. The District Court concluded that McGuffie could not assert a non-party affirmative defense, however, was permitted to introduce evidence of subsequent accidents to dispute causation. Truman filed a Petition for a Writ of Supervisory Control with this Court and requested that we conclude the District Court was proceeding pursuant to a mistake of law. We granted supervisory control.

¶2    This Court has been asked to resolve the following issues:

¶3    1.    Are the facts and issues presented in this case appropriate for resolution by supervisory control?

¶4    2.    May a defendant present evidence of a subsequent accident with a non-party to disprove liability for damages?

FACTUAL AND PROCEDURAL BACKGROUND

¶5    On March 6, 1996, Kessley Truman was stopped at a yield sign when her vehicle was struck from behind by a vehicle driven by Scott McGuffie. McGuffie later pled guilty to careless driving charges. Approximately one year later, Truman was involved in a second accident as a passenger in her sister's vehicle. In 1999, Truman suffered minor injuries as a passenger in an ultra-light aircraft.

2

¶6 On February 22, 1999, Truman filed the present action against McGuffie, and alleged she was entitled to damages for back, neck, and shoulder injuries caused by McGuffie. On January 18, 2000, Truman filed a complaint in which she alleged the second accident aggravated her back, neck, and shoulder injuries, and caused additional injuries to her nose and leg. Both complaints were filed in the District Court for the Eleventh Judicial District in Flathead County. No suit was filed for injuries resulting from the aircraft accident.

¶7 Truman moved the District Court to consolidate the suits. However, both defendants objected and alleged that consolidation would be prejudicial. The respective judges for the separate actions refused to consolidate the cases. McGuffie has not moved to join the pilot of the ultra-light aircraft as a party to this suit.

¶8 Truman moved for partial summary judgment in her suit against McGuffie on April 25, 2001. She requested the District Court to determine that McGuffie was negligent as a matter of law, to determine that Truman was not contributorily negligent, to prohibit McGuffie from raising non-party causation as a defense, and to prohibit McGuffie from introducing evidence of the subsequent accidents.

¶9 The District Court granted Truman's motion in part and concluded that McGuffie was negligent as a matter of law, that Truman was not contributorily negligent, and that McGuffie could not use a non-party affirmative defense. However, the District Court denied her motion in part and concluded that McGuffie was entitled to present evidence of the second car accident and the ultra-light accident to disprove causation. The court stated:

> Plaintiff must prove that the accident of March 6, 1996, was a substantial factor in causing her injuries, if any. Defendant is entitled to dispute that causation element. On the other hand, Montana law prohibits Defendant from

3

negating the causation element by introducing evidence or by arguing that the conduct of unnamed third parties was the real cause of Plaintiff's injuries. Accordingly, the facts of the subsequent incidents are admissible and any reasonable inference that can be argued from those facts is permissible, so long as it goes to the negation of cause, not to its attribution to some third party or parties.

This is a fine line, but not impossible to draw. To simply exclude evidence of the subsequent accidents would result in an injustice to Defendant. The jury must not be asked to apportion Plaintiff's injuries amongst nonparties. The jury may hear relevant, factual information regarding subsequent events.

¶10  On September 5, 2001, Truman filed a Petition for Writ of Supervisory Control with this Court. She alleged that the District Court was incorrect when it concluded that the evidence of the subsequent accidents involving non-parties could be presented to the jury. She further alleged that there was no plain, adequate, or speedy remedy by appeal and that she would be put at significant disadvantage litigating her case if the proceedings were permitted to continue based on the District Court's misapprehension of the law.

DISCUSSION

ISSUE 1

¶11  Are the facts and issues presented in this case appropriate for resolution by supervisory control?

¶12  Truman contends that supervisory control is appropriate in this case because the District Court made a mistake of law which creates a gross injustice that will place her at a significant disadvantage litigating her case. McGuffie maintains that Truman has an adequate remedy by appeal and that supervisory control is not appropriate.

¶13  This Court will assume supervisory control of a district court to direct the course of litigation where the district court is proceeding based on a mistake of law, which if

4

uncorrected, would cause significant injustice for which an appeal is an inadequate remedy. *Park v. Sixth Judicial Dist. Court*, 1998 MT 164, ¶ 13, 289 Mont. 367, ¶ 13, 961 P.2d 1267, ¶ 13. Whether supervisory control is appropriate is a case-by-case decision that depends on the presence of extraordinary circumstances and a particular need to prevent an injustice from occurring. *Park*, ¶ 13.

¶14 In *Plumb v. Fourth Jud. Dist. Court* (1996), 279 Mont. 363, 927 P.2d 1011, we considered whether supervisory control was appropriate in a case where the district court intended to permit the defendant to assert that damages were caused, or contributed to, by a non-party pursuant to § 27-1-703(6), MCA (1995). The plaintiff, Roberta Plumb, was injured when she slipped on the floor while shopping at Missoula's Southgate Mall. The defendant alleged that Plumb's physician contributed to her injuries and, therefore, it was entitled to proportionate reduction of its damage liability. Plumb argued that § 27-1-703(6), MCA (1995), which provided for the non-party defense, violated her and her doctor's right to substantive due process. The district court concluded that the defendant was permitted to raise the third party defense and Plumb petitioned this Court for supervisory control.

¶15 Judicial economy and inevitable procedural entanglements were cited as appropriate reasons for this Court to issue a writ of supervisory control. *Plumb*, 279 Mont. at 370, 927 P.2d at 1015-16. We noted that, if the district court proceeded based upon a mistake of law, the course of discovery, the cost of preparation, and the trial itself would be adversely affected. *Plumb*, 279 Mont. at 370, 927 P.2d at 1015-16. Moreover, settlement negotiations would be hindered, any verdict reached would be questionable, and subsequent litigation and additional costs were inevitable. *Plumb*, 279 Mont. at 370, 927 P.2d at 1015-16. Based on

5

these considerations, we concluded that a remedy by appeal would be inadequate and a speedy remedy by supervisory control was necessary to serve justice. *Plumb*, 279 Mont. at 370, 927 P.2d at 1016.

¶16 We conclude that the same considerations present in *Plumb* are present in this case. McGuffie intends to present evidence of subsequent accidents with non-parties to negate Truman's allegations. Moreover, the District Court stated that the jury will be permitted to reach reasonable inferences as to apportionment based upon that evidence. If incorrect, the court's conclusions will impact all aspects of the proceeding from preparation for trial to settlement negotiations and the trial itself. Certainly, the admission of improper evidence or improper jury instructions will render the results unreliable and the cost to Truman in both time and finances will be substantially increased. Consequently, we conclude that an appeal is an inadequate remedy and justice requires this Court to exercise supervisory control to determine if the District Court is proceeding based upon a mistake of law.

ISSUE 2

¶17 May a defendant present evidence of a subsequent accident with a non-party to disprove liability for damages?

¶18 Truman contends that a defendant may not allege that a non-party is the cause of her injuries. Consequently, she maintains that evidence of a non-party tortfeasor is inadmissible and McGuffie is prohibited from introducing evidence about the second car accident and the ultra-light aircraft accident to a jury. In the alternative, Truman maintains that the Defendant bears the burden of proving that liability is divisible and apportionable. She maintains that the Defendant has not satisfied that burden and the jury may not consider apportionment.

6

¶19 The District Court concluded that Truman was burdened with proving that McGuffie substantially caused her injuries and that evidence of the subsequent accidents would be admissible to disprove causation. Furthermore, the court stated that the jury would be permitted to draw reasonable inferences from the evidence presented by McGuffie. The court recognized that there is a fine line between permissible evidence of subsequent events to negate causation and attempting to blame or apportion damages to a non-party.

¶20 In *Plumb*, we exercised supervisory control to determine whether § 27-1-703(6), MCA (1995), which permitted the defendant to raise a third-party affirmative defense that a non-party was liable for the plaintiff's damages, was constitutional. We concluded that the State had a legitimate interest in apportioning liability, however, § 27-1-703(6), MCA (1995), was not rationally related to furthering that objective. *Plumb*, 279 Mont. at 377, 927 P.2d at 1019. We reasoned that the statute was flawed because the non-party was not afforded the opportunity to appear, to examine witnesses, or to offer evidence. *Plumb*, 279 Mont. at 377, 927 P.2d at 1020. The process was actually more likely to subject the non-party to a disproportionate assignment of liability and hinder the plaintiff's statutory right to recover damages to which she was legally entitled. *Plumb*, 279 Mont. at 377-78, 927 P.2d at 1020. Moreover, the statute was flawed because it required that the plaintiff expend energy litigating the case from the non-party's perspective to prevent the jury from assigning disproportionate liability to a non-party. *Plumb*, 279 Mont. at 378, 927 P.2d at 1020. Consequently, we concluded that the non-party affirmative defense violated the Montana Constitution's guarantee of substantive due process.

¶21 Truman contends that McGuffie may not present evidence of subsequent accidents for the same reason that the affirmative non-party defense was invalidated in *Plumb*. However, the issue in this case is different from the apportionment of liability to a non-party. The issue here is not the conduct of an unrepresented person, but whether other events contributed to the plaintiff's condition. The plaintiff is not being asked to defend someone else's conduct, but to prove the cause of her own condition. Whether McGuffie is permitted to present evidence of the subsequent accidents to disprove causation of damages is not resolved by *Plumb*. The extent, if any, that McGuffie is permitted to present evidence of the subsequent accidents to negate cause is an issue of first impression for this Court.

¶22 The District Court relied upon the reasoning of the United States District Court for the District of Montana in *Bell v. Glock, Inc.* (D.Mont. 2000), 92 F.Supp.2d 1067. That court concluded that evidence of the subsequent accidents was admissible. In *Bell*, the defendant attempted to raise a non-party affirmative defense. The United States court correctly concluded that it was not permitted to do so. However, the court held that relevant evidence surrounding the incident itself was admissible to negate cause, so long as the defendant did not attempt to argue that the negligence of a third party was in fact responsible for Bell's injury. *Bell,* 92 F.Supp.2d at 1070-71. We agree with that much of the United States District Court's decision. The question then becomes, what are the parties' respective burdens when subsequent events are introduced to disprove causation?

¶23 In *Gross v. Lyons* (Fla. 2000), 763 So.2d 276, the Florida Supreme Court considered a similar issue. Selma Gross was involved in two separate accidents approximately three

8

months apart. She filed suit against the first tortfeasor and alleged that her damages were caused by the first accident alone. The defendant admitted liability for the accident, but alleged that the second accident was the cause of Gross's injury.

¶24 The Florida court concluded that where the first of two successive tortfeasors is sued and liability has been established, but the parties do not present sufficient evidence for a jury to apportion the damages between the two accidents, the first tortfeasor is liable for the entire injury. *Gross*, 763 So.2d at 279. The plaintiff's burden to prove that the first tortfeasor's negligence is the cause of her "indivisible injury" is relaxed as it relates to apportionment of causation. The court reasoned that when the plaintiff has done everything possible to segregate damages a tortfeasor should not escape liability simply because two independent incidents contributed to the cause of an injury. *Gross*, 763 So.2d at 279. Adopting the indivisible injury rule, the Florida court refused to make an arbitrary apportionment and concluded that charging one party for the entire harm was more equitable than leaving the victim of negligence without compensation. *Gross*, 763 So.2d at 279-80.

¶25 An "indivisible injury" occurs when more than one incident contributes to a single injury and there is no logical or rational basis for dividing that injury. Restatement (Second) of Torts § 433A (1965). Under such circumstances, rather than arbitrarily apportioning liability, each tortfeasor is charged with liability for the entire harm. Restatement (Second) of Torts § 433A. The Florida court recognized that the indivisible injury rule and apportionment of damage based on fault are not mutually exclusive. *Gross*, 763 So.2d at 280-81.

9

¶26     This Court addressed a similar issue in *Azure v. City of Billings* (1979), 182 Mont. 234, 596 P.2d 460.  In that case the plaintiff, Jeffery Azure, was severely beaten by a tavern owner.  Later that evening the police arrested him for trespassing and public intoxication.  Despite outward evidence that he was both intoxicated and injured, the police did not comply with their statutory duty to seek medical attention.  Azure was held for sixteen hours before he was taken to a doctor.  By that time, blood clots had formed in Azure's brain which caused total and permanent disability.  Azure sued the City of Billings and the tavern owner separately.  The suit against the tavern owner was settled, and the suit against the City of Billings went to trial.

¶27     At trial, Azure objected to the defendant's repeated attempts to present evidence that the tavern owner, and not the City of Billings, caused his injury.  The district court gave a jury instruction that addressed the issues of divisibility of injuries and apportioning liability.  We concluded that the instruction was given in error because insufficient evidence had been presented at trial to justify apportionment or divisibility.  *Azure*, 182 Mont. at 249, 596 P.2d at 469.  We held that once a plaintiff presented a prima facie case that the defendant's conduct contributed as a cause of an injury, the burden shifted to the defendant to prove that the injury was divisible.  *Azure*, 182 Mont. at 252-53, 596 P.2d 470-71.  Furthermore, in the absence of proof that an injury is divisible, the defendant is jointly and severally liable for the plaintiff's entire injury pursuant to the indivisible injury rule.  *Azure*, 182 Mont. at 253, 596 P.2d at 471.

¶28     We explained:

> We believe on the other hand, that where the tortious act is established, it is better that the tortfeasor should be subject to paying more than his theoretical share of the damages in a situation where . . . it [is] difficult to prove which tortious act did the harm.

*Azure*, 182 Mont. at 253, 596 P.2d at 471.

¶29 While the indivisible injury rule is not conceptually obscure, we recognized that its practical application could create confusion. We suggested that the trial judge serves "a critical function in assessing the evidence at the end of the case before he instructs the jury" to minimize the risk of an arbitrary or speculative apportionment of damages where the acts of multiple parties combined to produce a single injury. *Azure*, 182 Mont. at 254, 596 P.2d at 471. We stated:

> If the evidence is such that the harm can with reasonable certainty be divided among several causes, the court must instruct the jury that it is their duty to apportion the damages. . . . [I]f the record can not, with reasonable certainty, support the divisibility of harm, the trial court must instruct the jury to find one award of total damages for which the defendant or defendants are jointly and severally liable . . . The court may also determine that the evidentiary record is such that a jury may reasonably differ as to divisibility of harm. In that event the court must instruct the jury that it may if able to do so, divide the harm and therefore apportion the damages. But he should also instruct the jury that it may also conclude that the harm caused is not divisible and accordingly that it may award a verdict for which the defendant or defendants are jointly and severally liable.

*Azure*, 182 Mont. at 254, 596 P.2d at 471. We concluded that the evidence of record was insufficient to warrant an apportionment jury instruction.

¶30 *Azure* laid the foundation for our decision in *Callihan v. Burlington Northern Inc.* (1982), 201 Mont. 350, 654 P.2d 972. In *Callihan*, we considered the extent to which a pre-existing condition could be presented to a jury. We held that the relevant facts concerning

11

a pre-existing injury could be presented to a jury, however, we endorsed a jury instruction that provided in part: "[I]f you find that the evidence does not permit such an apportionment, then the defendant is liable for the entire disability." *Callihan*, 201 Mont. at 357, 654 P.2d at 976.

¶31 When these cases are read in concert, a clear rule of law emerges. First, a defendant is permitted to submit relevant evidence of subsequent accidents to negate allegations that he is the cause or sole cause of an injury. In all of the cited cases, evidence of non-party accidents was admitted subject to traditional evidentiary considerations such as prejudice and relevancy. Montana law further prohibits a defendant from attempting to apportion fault to the conduct of a non-party. Assignment of liability to a non-party without affording that party the opportunity to defend against liability, risks an unreliable and disproportionate assignment of liability, and places the burden of defending the non-party on the plaintiff. This requires that McGuffie walk a tightrope when introducing evidence of the subsequent accidents, and that the court keep a watchful eye to ensure that improper evidence does not prejudice the jury.

¶32 Second, Truman must prove McGuffie's conduct contributed as a substantial factor to the causation of any damages that she has sustained. However, she need not prove the extent to which he is responsible. If she suffers from an indivisible injury, to which McGuffie's negligence was a substantial contributing cause, McGuffie is liable for the entire damage. However, McGuffie may attempt to negate those allegations with relevant evidence as noted above. To do so, McGuffie must prove, by a reasonable medical probability, that

12

the injury is divisible and that he is only liable for a portion of those damages. In that case, the jury may be permitted to reduce McGuffie's obligation by the portion of Truman's damages for which he has proven he not is responsible. However, it is crucial that the jury instructions indicate that McGuffie is liable for the entire injury if he fails to prove that Truman's injury is divisible. *See Callihan*, 201 Mont. at 357, 654 P.2d at 976.

¶33  Contrary to the District Court's holding, the jury is only permitted to consider apportionment if McGuffie proves the damages suffered by Truman are divisible. An apportionment instruction must not be offered to the jury if McGuffie does not demonstrate that the injury suffered by Truman is divisible and that apportionment is in fact appropriate in this case. *See Azure*, 182 Mont. at 250, 596 P.2d at 469.

¶34  Truman further requests that this Court determine that the evidence presented on summary judgment is insufficient to warrant an apportionment instruction and that McGuffie is not entitled to offset the settlement in the subsequent accident from any damages awarded in this case. We conclude that these determinations are more appropriately made by the District Court. This matter is remanded to the District Court for further proceedings consistent with this Opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON

13

/S/ JIM REGNIER
/S/ JIM RICE

Chief Justice Karla M. Gray dissenting.

¶35     I respectfully dissent from the Court's opinion and, indeed, I concede that I erred in joining the Court's November 15, 2001, order and the briefly stated rationale therein for accepting this case on supervisory control. The rationale advanced in that order was that this case presents "a legal issue which has not previously been decided by this Court and that awaiting a full trial and appeal before resolving that issue would lead to unnecessary expense and delay."  That rationale, on a stand-alone basis, makes this Court a court of first resort-- via the exercise of our supervisory control jurisdiction--on every conceivable legal issue on which there is no Montana precedent. Many such issues exist, and they properly should be decided by Montana's uncommonly competent district courts and brought to this Court on appeal in the usual fashion.

¶36     As to the language in our 2001 order about unnecessary expense and delay, it is sad but true that the judicial system is rife with delays caused sometimes intentionally and sometimes inadvertently by lawyers, and nearly inevitably by overcrowded dockets in most of our district courts. Moreover, the petition for writ of supervisory control in this case was filed on September 5, 2001, and the briefing concluded--and was sent up to this Court by our Clerk--on December 17, 2001. The passage of approximately 17 months from then until now hardly advances the notion of avoiding unnecessary delay, particularly since this matter may well be appealed after return to the District Court and a likely trial.

¶37     With regard to the Court's expanded explanation in its opinion of why this case is appropriate for resolution via supervisory control, it is my view that the more full

15

explanation also is flawed.  I agree with the Court's statements in ¶ 13 that, under *Park*, we will assume supervisory control where a district court is proceeding based on a mistake of law causing  a significant injustice for which an appeal is an inadequate remedy, and that we make such determinations depending on the presence of "extraordinary circumstances."  My response to those statements is to wonder how the District Court could be proceeding under a mistake of law in the present case where, as noted in the order accepting supervisory control, the issue has not previously been decided by this Court and upon which, as a result, there is no controlling authority.  Further, as stated above, there is nothing "extraordinary" about issues of first impression.  Finally, with regard to the Court's statements in ¶ 16 about the effects of the admission of improper evidence or improper jury instructions potentially costing Truman in both time and finances, this is true in perhaps hundreds of cases involving evidentiary rulings and jury instructions which come to us on appeal in the ordinary course of events each year.  The Court seems to be drifting into accepting supervisory control over nearly any kind of pretrial ruling, whether based on a purely legal conclusion or a discretionary act, where the ultimate result could be a reversal on appeal and the necessity of further proceedings thereafter.  Evidentiary rulings, rulings on motions to dismiss or summary judgment, and speedy trial rulings are not "extraordinary circumstances" which create significant injustice for which an appeal is an inadequate remedy.

¶38     To follow the path the Court is taking on exercising supervisory control is unwise and unwarranted.  The "costs" of doing so are significant.  In the present case, there has been substantial delay pending the Court's decision on supervisory control, with more delays to

come in scheduling further proceedings in the District Court and the remaining possibility of an appeal after trial--together with its own expenses and delay for all concerned. More importantly, each supervisory control petition we accept takes this Court's time away from the appeal docket, which is our primary "stock in trade," and delays the opinions in those appeals even longer. Finally, every case we accept on supervisory control spawns yet more petitions which, even if ultimately denied, take time to read and discuss--more time away from other obligations of the Court. I fear that, in the Court's eagerness to direct the course of litigation in the district courts, we are neglecting and delaying the hundreds of appeals pending before us. We also are intruding far too often into the domain of our district courts which, aside from being inappropriate, merely makes the scheduling of those courts' overcrowded dockets more difficult.

¶39    It is my view that supervisory control was improvidently granted in this case and, having conceded my own error in signing our 2001 order, I dissent from the Court's opinion on Issue 1. I would not address Issue 2.


                                                            /S/ KARLA M. GRAY

17