CHIEF JUSTICE GRAY,
dissenting.
¶39 As in our recent case of Truman v. Eleventh Jud. Dist. Ct., 2003 MT 91, 315 Mont. 265, 68 P.3d 654 (Gray, C.J., dissenting), I respectfully dissent from the Court’s decision on Issue 1, and concede that I erred in joining the Court’s February 26,2002, order concluding that this matter is appropriate for supervisory control. In my view, supervisory control was improvidently granted. My dissent in the present case is based on grounds similar to those set forth in my Truman dissent, and is premised on my growing concerns over the frequency of our exercise of supervisory control over matters pending in the district courts, especially when we cannot keep up with our “stock in trade” case load of appeals.
¶40 In Truman, the Court based its exercise of supervisory control jurisdiction on the fact that the case presented an issue of first impression in Montana. My dissent pointed out that if we accepted every question of first impression arising in Montana on supervisory control, we would become a court of first resort, rather than last resort, far too often. Here, the Court concludes at ¶ 18 that exercising supervisory control over a trial court’s denial of summary judgment on the matter of whether res judicata controls is appropriate because, if the trial court erred in denying summary judgment, Lane would have to defend against the same claim a second time, with the attendant delay and expense, thereby causing a gross injustice. While purporting to rely on Plumb, it is clear the Court is now abandoning both the “extraordinary circumstances” and “inadequate remedy of appeal” factors in that case. In other words, it appears that this Court will now-whenever it chooses-exercise supervisory control over any legal ruling in any trial court on an issue of law when delay and expense might accompany finishing the trial court proceedings and pursuing an appeal. This is a far cry from what I believe Plumb intended.
¶41 In Truman, the Court also included within its exercise of supervisory control discretionary acts by the trial court relating to the admission of evidence. The numbers of pretrial discretionary rulings by trial courts across Montana every year must surely be in the tens of thousands. Will we spend this Court’s limited time resource entertaining ever-increasing numbers of petitions for supervisory control and responses based on discretionary pretrial rulings, which *66 take considerable time to read even in the event we deny supervisory control, and at the same time intrude ever more into the trial courts’ proceedings, authority and scheduling difficulties?
¶42 At the bottom line, the Court is using supervisory control jurisdiction to transform the traditional structures and roles of the trial courts and this Court. A “gross injustice” apparently now means only an erroneous-or potentially erroneous-ruling or an alleged pretrial abuse of discretion which, if not corrected by this Court’s intervention, will permit the proceedings in the trial court to proceed in their normal course with their associated delays and expenses. In the future, will any rational attorney refrain from petitioning for 'supervisory control on any nonappealable ruling at any stage in trial court proceedings? On what grounds will the Court ever find reason to deny supervisory control? And how in the world does such an approach comport with either the trial courts’ general authority to control the proceedings before them or our primary role as an appellate court?
¶43 In the past, we commonly denied supervisory control in cases involving an interlocutory, nonappealable order reviewable on appeal from a final judgment. See, e.g., State ex rel. Kosena v. Dist. Ct. (1977), 172 Mont. 21, 560 P.2d 522. In cases such as this one, which involve a ruling denying summary judgment on legal grounds, the rationale for rejecting review via supervisory control is that an order denying summary judgment is subject to later review by the trial court if circumstances warrant. “[I]n the usual case good judicial administration requires freedom of action by the district court prior to trial and noninterference on our part at this stage.” See Kosena, 172 Mont. at 22, 560 P.2d at 523. We also observed in Kosena that only extraordinary and compelling circumstances-'beyond simply requiring a party to proceed to triaT’-should warrant review via supervisory control. See Kosena, 172 Mont at 22-23, 560 P.2d at 523. The same rationale is appropriate with regard to a trial court ruling granting summary judgment. Indeed, it is my view that the Kosena reasoning is as valid-and as critical to the proper administration of justice in Montana-today as it was in 1977.
¶44 I admit that I joined the Court’s decision in Plumb in November of 1996. I thought the Court meant all the things said therein, including the necessity of extraordinary circumstances and gross injustice. And I have joined in any number of opinions since that time which, with the hindsight which is so often more accurate, seemed like appropriate exercises of supervisory control at the time. I cannot undo those decisions; but I can refrain from joining in increasing numbers *67 of such cases.
¶45 In the six-year period from 1991 through 1996-Plumb having been decided on November 22, 1996-this Court granted supervisory control, in whole or in part, in 35 cases. In the six years following Plumb-that is, 1997 through 2002-we did so in 60 cases. I see no signs of the numbers declining and, as I suggested in my Truman dissent and above, such a decline is altogether unlikely when the Court continues to show such a lack of restraint in addressing cases seeking supervisory control. Indeed, I submit that the numbers will continue to increase.
¶46 Looking at the opinions on appeals issued by this Court for the relatively short period from the beginning of 2001 to early this month provides a frightening picture of where we may be headed if the Court continues expanding the cases in which it determines supervisory control jurisdiction is appropriate. Approximately 39 cases involved an issue relating to the grant or denial by a trial court of a motion to dismiss in a civil case. The same number of cases involved an issue relating to the denial by trial courts of motions to dismiss in criminal cases. An additional 11 appeals raised the issue of whether a trial corut erred in denying a speedy trial challenge by a criminal defendant. These 90 or so cases on appeal involved pretrial, interlocutory legal rulings by trial courts properly raised on appeal. Under the Court’s expanded view of supervisory control, it appears that all of these issues can now be presented via a petition for supervisory control.
¶47 In addition, over the same short time frame, we have addressed a trial court’s res judicata ruling, such as that involved and accepted for supervisory control in the present case, in 13 appeals. Similarly, from January of 2001 until early April of 2003, we issued opinions on appeal addressing the grant or denial of summary judgment in approximately 100 cases. Presumably, all res judicata and summary judgment rulings now may be raised in petitions for supervisory control and will be considered by this Court.
¶48 Finally, Plumb requires not just a gross injustice, but a mistake of law by a trial court. In the present case, the Court affirms the District Court’s legal ruling. Neither a gross injustice nor a mistake of law is present here.
¶49 I simply cannot agree with the Court’s ever-expanding definition of whether cases are appropriate for our exercise of what is supposed to be “extraordinary” supervisory control jurisdiction. It is far too intrusive into our trial courts’ appropriate spheres of action. It is far *68 too unfair to the litigants who have proceeded through trial court proceedings, who are before this Court on appeal awaiting the “end of the road” in their long-standing legal disputes, and who must wait even longer because of the excessive numbers of supervisory control petitions the Court is accepting. And finally, if we intend to continue to increase our work load by encouraging ever more numerous petitions for supervisory control, we should have the decency to quit speaking publicly about our crushing work loads and the long hours we put in.
¶50 I dissent.